**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| QUINA C., | ) |
| | ) |
|    Plaintiff(s) | ) |
| | ) |
|    vs. | )   Case No. 4:23-CV-1721 SRW |
| | ) |
| MARTIN O'MALLEY,[1] | ) |
| Commissioner of Social Security | ) |
| Administration, | ) |
| | ) |
|    Defendant(s). | ) |

## **MEMORANDUM AND ORDER**

This matter is before the Court on review of an adverse ruling by the Social Security Administration. The Court has jurisdiction over the subject matter of this action under 42 U.S.C. § 405(g). The parties consented to the exercise of authority by the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Plaintiff filed a Brief in support of the Complaint. ECF No. 18. Defendant filed a Brief in Support of the Answer. ECF No. 21. The Court has reviewed the parties' briefs and the entire administrative record, including the transcripts and medical evidence. Based on the following, the Court will affirm the Commissioner's decision.

**I.**    **Factual and Procedural Background**

On November 30, 2020, Plaintiff Quina C. protectively filed an application for supplemental security income under Title XVI, 42 U.S.C. §§ 1381, *et seq.*, with an alleged onset

---

[1] At the time this case was filed, Martin O'Malley was the Commissioner of Social Security. Carolyn Colvin became the Commissioner of Social Security on November 30, 2024. When a public officer ceases to hold office while an action is pending, the officer's successor is automatically substituted as a party. Fed. R. Civ. P. 25(d). Later proceedings should be in the substituted party's name, and the Court may order substitution at any time. *Id.* The Court will order the Clerk of Court to substitute Carolyn Colvin for Martin J. O'Malley in this matter.

date of March 11, 2020. Tr. 536-43.[2] Plaintiff's applications were denied upon initial consideration and reconsideration. Tr. 467-72, 476-80. On July 15, 2021, she requested a hearing before an Administrative Law Judge ("ALJ"). Tr. 479-81.

Plaintiff appeared for an in-person hearing, with the assistance of counsel, on October 6, 2022. Tr. 320-67. Plaintiff testified concerning her disability, daily activities, and functional limitations. *Id*. During the hearing, the ALJ received testimony from vocational expert ("VE") Robin Pyle. *Id*. On February 3, 2023, the ALJ issued an unfavorable decision finding Plaintiff not disabled. Tr. 162-77. Plaintiff filed a request for review of the ALJ's decision with the Appeals Council. Tr. 530-32. On November 2, 2023, the Appeals Council denied Plaintiff's request for review. Tr. 1-7. Accordingly, the ALJ's decision stands as the Commissioner's final decision.[3]

With regard to Plaintiff's testimony, medical records, and work history, the Court accepts the facts as presented in the parties' respective statements of facts and responses. The Court will discuss specific facts relevant to the parties' arguments as needed in the discussion below.

## II.     Legal Standard

A disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less

---

[2] The SSA's paperwork contains a discrepancy as to the date Plaintiff filed her application. *See* Tr. 453 (listing the filing date as October 29, 2020), *compare to* Tr. 536 (listing the filing date as November 30, 2020). This discrepancy does not affect the Court's decision.

[3] The Court notes Plaintiff was previously determined to be disabled as of September 12, 2007. Tr. 373-84. On July 14, 2016, it was determined that Plaintiff was no longer disabled as of July 1, 2016. Tr. 385-401. Approximately two years later, Plaintiff refiled for SSI benefits alleging an onset date of September 28, 2018, which were denied upon the SSA's determination that Plaintiff was not disabled. Tr. 407-23.

than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A claimant has a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" § 1382c(a)(3)(B).

The Commissioner follows a five-step sequential process when evaluating whether the claimant has a disability. 20 C.F.R. § 416.920(a)(1). First, the Commissioner considers the claimant's work activity. If the claimant is engaged in substantial gainful activity, the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether the claimant has a severe impairment "which significantly limits claimant's physical or mental ability to do basic work activities." *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010); *see also* 20 C.F.R. § 416.920(a)(4)(ii). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007); *see also* 20 C.F.R. §§ 416.920(c), 416.920a(d).

Third, if the claimant has a severe impairment, the Commissioner considers the impairment's medical severity. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), (d).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, the Commissioner assesses whether the claimant retains the "residual functional capacity" ("RFC") to perform his or her past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(5)(i). An RFC is "defined as the most a claimant can still do

despite his or her physical or mental limitations." *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011); *see also* 20 C.F.R. § 416.945(a)(1). While an RFC must be based "on all relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations," an RFC is nonetheless an "administrative assessment"—not a medical assessment—and therefore "it is the responsibility of the ALJ, not a physician, to determine a claimant's RFC." *Boyd v. Colvin*, 831 F.3d 1015, 1020 (8th Cir. 2016). Thus, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). Ultimately, the claimant is responsible for *providing* evidence relating to his RFC, and the Commissioner is responsible for *developing* the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3). If, upon the findings of the ALJ, it is determined the claimant retains the RFC to perform past relevant work, he or she is not disabled. 20 C.F.R. § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC does not allow the claimant to perform past relevant work, the burden of production to show the claimant maintains the RFC to perform work which exists in significant numbers in the national economy shifts to the Commissioner. *See Brock v. Astrue*, 574 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work which exists in significant numbers in the national economy, the Commissioner finds the claimant not disabled. 20 C.F.R. § 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, the Commissioner finds the claimant disabled. *Id.* At Step Five, even though the *burden of production* shifts to the Commissioner, the *burden of persuasion* to prove disability remains on the claimant. *Hensley*, 829 F.3d at 932.

If substantial evidence on the record as a whole supports the Commissioner's decision, the Court must affirm the decision. 42 U.S.C. §§ 405(g); 1383(c)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Id*. Under this test, the court "consider[s] all evidence in the record, whether it supports or detracts from the ALJ's decision." *Reece v. Colvin*, 834 F.3d 904, 908 (8th Cir. 2016). The Court "do[es] not reweigh the evidence presented to the ALJ" and will "defer to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence." *Id*. The ALJ will not be "reverse[d] merely because substantial evidence also exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently." *KKC ex rel. Stoner v. Colvin*, 818 F.3d 364, 370 (8th Cir. 2016).

### III. The ALJ's Decision

Applying the foregoing five-step analysis, the ALJ found Plaintiff has not engaged in substantial gainful activity since October 29, 2020, the application date. Tr. 164. Plaintiff has the severe impairments of "degenerative changes to the lumbar spine, major depressive disorder, bipolar disorder, borderline personality disorder, and post-traumatic stress disorder." Tr. 165-66. Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. Tr. 166-68. The ALJ found Plaintiff had the following RFC through the date last insured:

> [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except: she can frequently climb ramps and stairs but never climb ladders, ropes, and scaffolds. She can frequently balance, stoop, kneel, and crouch, and occasionally crawl. She must avoid concentrated exposure to extreme cold, vibration, fumes, odors, dusts, gases, poor ventilation, and hazards such as moving machinery and unprotected heights. She can perform only simple, routine, and repetitive tasks requiring only simple work-related decisions with few changes

5

in routine work setting. She can have no more than occasional interaction with supervisors, coworkers, and the general public.

Tr. 168.

To expedite processing, the ALJ proceeded to Step 5 without making a finding on past relevant work. Tr. 175. The ALJ noted Plaintiff has at least a high school education and was born on February 12, 1980, which is defined as a younger individual age 18-49, on the date the application was filed. *Id.* The ALJ found that transferability of job skills was not an issue because the Plaintiff did not have past relevant work. *Id.*

Considering Plaintiff's age, education, work experience, and RFC, the ALJ determined there are jobs that exist in significant numbers in the national economy that the Plaintiff can perform, including Office Helper (*Dictionary of Occupational Titles* ("*DOT*") No. 239.567-010, light work, with 74,720 jobs in the national economy); Garment Sorter (*DOT* No. 222.687-014, light work, with 222,230 jobs in the national economy); Photocopy Machine Operator (*DOT* No. 207.685-014, light work, with 18,033 jobs in the national economy), Semiconductor Bonder (*DOT* No. 726.685-066, sedentary work, with 24,340 jobs in the national economy); Table Worker (*DOT* No. 739.687-182, sedentary work, with 27,419 jobs in the national economy); and Laminator I (*DOT* No. 690.685-258, sedentary work, with 71,850 jobs in the national economy). Tr. 175-76. The ALJ concluded Plaintiff has not been under a disability, as defined in the Social Security Act, since October 29, 2020, the date the application was filed. Tr. 176.

**IV.     Discussion**

Plaintiff presents three assignments of error: (1) the ALJ improperly evaluated the State agency medical opinions of Drs. Michael O'Day, Judee Bland, Linda Skolnick, and Robert Cottone; (2) the RFC is not supported by substantial evidence; and (3) the decision lacks a proper pain evaluation. ECF No. 18.

6

### A. Medical Opinions

Claims filed after March 27, 2017, like Plaintiff's, require the ALJ to evaluate medical opinions pursuant to 20 C.F.R. § 404.1520c. This provision states the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [Plaintiff's] medical sources." 20 C.F.R. § 404.1520c(a). Rather, an ALJ is to evaluate the persuasiveness of any opinion or prior administrative medical finding by considering the: (1) supportability of the opinion with relevant objective medical evidence and supporting explanations; (2) consistency with the evidence from other medical sources and nonmedical sources in the claim; (3) relationship with the plaintiff, including length, purpose, and extent of treatment relationship, whether it is an examining source, and frequency of examination; (4) specialization; and (5) other relevant factors. 20 C.F.R. § 404.1520c(c).

Supportability and consistency are the most important factors; therefore, an ALJ must explain how he or she considered these factors in the decision. 20 C.F.R. § 404.1520c(b)(2). The more relevant the objective medical evidence and supporting explanations presented by a medical source are to *support* his or her medical opinions or prior administrative medical findings, and the more *consistent* medical opinions or prior administrative medical findings are with other medical sources and nonmedical sources, "the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* An ALJ may, but is not required to, explain how he or she considered the remaining factors. *Id. See Brian O. v. Comm'r of Soc. Sec.*, 2020 WL 3077009, at *4-5 (N.D.N.Y. June 10, 2020) ("Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning 'weight' to a medical opinion, the ALJ must still 'articulate how he or she considered the medical opinions' and 'how persuasive he or she finds all of the medical opinions.'") (quoting §

7

404.1520c(a), (b), alterations omitted). An ALJ must articulate how persuasive he found all medical opinions and prior administrative medical findings in a claimant's case record. § 404.1520c(b).

### 1. *Opinions of Drs. Robert Cottone, Ph.D. and Linda Skolnick Psy.D.*

On February 19, 2021, Dr. Cottone completed a non-examining Psychiatric Review Technique (PRT) and a Mental RFC Assessment based on the relevant medical records then available. Tr. 437-39, 445-49. He opined Plaintiff would have mild limitations in her ability to understand, remember, or apply information; and moderate limitations in her ability to interact with others, concentrate, persist, or maintain pace, and adapt or manage herself. Tr. 438. Dr. Cottone suggested that despite her limitations she would be able to "understand and remember and carry out simple instruction," "maintain adequate attendance and sustain an ordinary routine without special supervision," "interact adequately with peers and supervisors," and "adapt to most usual changes common to a competitive work setting." Tr. 449.

On May 28, 2021, Dr. Skolnick also conducted a non-examining PRT and found the same mild to moderate mental limitations. Tr. 456-58. She additionally stated her opinion that Plaintiff could only perform "simple work-related tasks away from the public and with superficial and infrequent contact with supervisors and coworkers" and would be "capable of responding to changes in the environment that are predictable and introduced gradually." Tr. 463.

In analyzing these opinions, the ALJ wrote:

Robert Cottone, Ph.D., offered findings in a prior administrative medical determination. He found mild limitations in understanding, remembering, and applying information. Otherwise, he found moderate limitations in mental functioning. He noted she worked part-time and cared for two children. He also said she helped with their homework, cooked, and handled her finances. He noted no diagnosed memory or intellectual disorders or loss of intelligence or memory. He said she could carry out simple work instructions and maintain adequate

8

attendance and sustain an ordinary routine without special supervision. He felt she could interact adequately with peers and supervisors. He felt she could adapt to most usual changes common to a competitive work setting. Linda Skolnick, Psy.D., concurred with the findings in a reconsideration determination. Their opinions are persuasive. The medical evidence is consistent with the moderate limitations set forth given her reported issues with attention, anger, distrust of others, and variable moods. The evidence is also consistent with mild limitations in understanding, remembering, and applying information given her normal fund of knowledge and memory in exams. Their opinions are generally supportable. As they noted, she worked part-time, cooked, cleaned, cared for her children, and handled her finances. However, the limitations they set forth were somewhat incongruous with the limitations in the B criteria given that they found moderate social limitations but did not recommend any social limitations in the work environment. Further, they found moderate limitations in adapting and managing herself but stated she could adapt to most changes in a common work setting, which also fails to acknowledge work-related limitations. The residual functional capacity in this decision accounts for the moderate social limitations in limiting her interaction with others in the workplace. Further, the residual functional capacity addresses issues adapting and managing herself by limiting her to unskilled work with simple work decisions and few changes in the routine work setting.

Tr. 173-74 (internal citations to the record omitted).

Plaintiff's argument that the ALJ did not properly evaluate the persuasiveness of the state agent consultants fail because she is essentially objecting to the ALJ having assessed *greater* limitations than what the doctors opined. As quoted above, the ALJ chose to increase Plaintiff's limitations related to socializations and adaption. Plaintiff's "argument (even if accepted) would merely support a finding of harmless error because [s]he has failed to provide any indication that the ALJ would have found [her] disabled but for the assessment of greater limitations." *Durnil v. Kijakazi*, N2022 WL 3715628, at *6 (E.D. Mo. Aug. 29, 2022) (citing *Lucus v. Saul*, 960 F.3d 1066, 1069 (8th Cir. 2020) ("An error is harmless when the claimant fails to provide some indication that the ALJ would have decided differently if the error had not occurred.") (internal quotation marks omitted)). *See also Provasnik v. O'Malley*, 2024 WL 864094, at *8 (E.D. Mo. Feb. 29, 2024) ("Because the ALJ found greater limitations resulting from [Plaintiff's] mental impairments than those found by the state agency psychologists, any error resulting from the

9

ALJ's evaluation of these opinions was harmless"); *Azar v. O'Malley*, 2024 WL 1299270, at *9 (E.D. Mo. Mar. 27, 2024) (same).

Notwithstanding the above, the Court cannot find that the ALJ erred in evaluating the persuasiveness of Drs. Cottone or Skolnick. The ALJ appropriately analyzed the consistency of the State agent's opinions with the record and the manner in which the State agents supported their conclusions. The ALJ noted that both Dr. Cottone and Skolnick considered Plaintiff's ability to work part-time, cook, clean, care for her children, and handle her own finances. Tr. 173-74 (citing 438-39, 457-58). While Plaintiff argues the ALJ should have considered her statements that her fiancé and sister help her with some tasks, "receiving assistance does not preclude an ALJ from considering such activities when judging the consistency of a claimant's complaints." *Schmidt v. Berryhill*, 2019 WL 339634, at *4 (E.D. Mo. Jan. 28, 2019).

Additionally, a "claimant's ability to perform part-time work may be considered as part of the credibility analysis" and an "ability to work (even part-time, and [] in an environment with a set routine), is to some extent inconsistent with [] allegations of disabling mental impairments." *Marino v. Berryhill*, 2018 WL 4383354, at *7 (E.D. Mo. Sept. 14, 2018). Here, records from February of 2021 show Plaintiff worked at a school as a janitor five days per week from 5pm to 10pm. Tr. 2145. She reported she "love[d] her boss and co-workers." *Id*. In June of 2021, records reflect she increased her hours to full time. Tr. 1544, 1558. In January of 2022, Plaintiff was working an assembly line job for two months and "loving it." Tr. 1514. She even described getting along with her co-workers so well that they were giving her gifts. *Id.* These records go towards Plaintiff's abilities to interact with coworkers and be supervised.

The ALJ also cited to records evidencing Plaintiff did not have any deficiencies related to memory or knowledge, finding it supported mild limitations in her ability to understand, remember, or apply information, and to perform simple work. *See* Tr. 1190 (memory described

10

to be "intact to recent and distant events per interview"); Tr. 1226-27 (fund of knowledge described as "commensurate to level of education"); Tr. 1518 (memory "grossly intact" and fund of knowledge "grossly average"); Tr. 1535 (memory "intact" and fund of knowledge "seemingly average"); Tr. 3323 (memory "normal" and fund of knowledge "average"); Tr. 3329 (same). Despite Plaintiff's argument otherwise, Plaintiff's consistent normal memory and fund of knowledge undoubtedly relates to whether she has limitations in understanding, remembering, and applying information.

The ALJ further found that Dr. Cottone and Skolnick's moderate limitations were consistent with records showing issues with attention, anger, distrust of others, and variable moods. Tr. 174 (citing 431-52, 1529, 1548). Plaintiff argues the ALJ erred by not explicitly describing how those records were consistent with moderate limitations. The Court does not agree. "The paragraph concerning the ALJ's evaluation of [a medical] opinion cannot be read in isolation but must be read as part of the overall discussion of plaintiff's RFC assessment." *Trosper v. Saul*, 2021 WL 1857124, at *5 (E.D. Mo. May 10, 2021). Earlier, the ALJ, in detail, explained why moderate limitations were appropriate in relation to her mood and interactions with others:

> The claimant reported isolative behaviors due to depression. She said she spent time with others. However, she said she argued with others and did not trust people due to past abuse. In treatment, she reported relationship stressors, including the end of a long-term relationship and an affair. However, she also indicated she had supportive family relationships. She was able to work during the relevant time period. During her employment, she stated she got along well with her supervisor and coworkers. She reported no difficulties interacting with the public in her work positions. In exams, she had good eye contact and was cooperative with treatment providers. Treatment records noted a history of irritability and anger outbursts, but she was rarely irritable or angry in exams. Treatment records also noted persistent distrust of others due to her past abuse. However, there was no evidence of evasiveness or guardedness with treatment providers. The claimant has a moderate limitation in interacting with others due to occasionally reported isolative behaviors, distrust of others, and a history of irritability and anger, which was considered in limiting her to no more than

11

>occasional interaction with others in the workplace. The evidence does not support more than moderate limitations given her cooperative behavior with treatment providers with little irritability or anger. Further, the claimant was able to interact appropriately with others in work settings during the relevant time period, which supports no more than moderate limitations in social functioning.

Tr. 167 (internal citations to the record omitted).

To the extent Plaintiff argues that the ALJ completely failed to evaluate the opinion of Dr. Skolnick, the Court again does not agree. The ALJ specifically discussed and cited to her opinion within the determination. Her limitations were substantially similar to Dr. Skolnick's and, as the Commissioner points out, an ALJ "is not required to explicitly . . . reconcile every conflicting shred of medical evidence." ECF No. 21 at 7 (quoting *Austin v. Kijakazi*, 52 F.4th 723, 729 (8th Cir. 2022)).

Thus, the Court finds no error in the ALJ's evaluation of Drs. Cottone and Skolnick's medical opinions.

### 2. *Opinions of Drs. Michael O'Day and Judee Bland*

On February 25, 2021, Dr. Michael O'Day performed a non-examining Physical RFC Assessment based on the relevant medical records then available. Tr. 441-45. He opined Plaintiff could occasionally lift and/or carry 20 pounds; frequently lift and/or carry 10 pounds; stand and/or walk with normal breaks for a total of 6 hours in an 8-hour workday; sit with normal breaks for a total of 6 hours in an 8-hour workday; frequently climb ramps/stairs, stoop, kneel, and crouch; occasionally crawl; and never climb ladders, ropes, and scaffolds. Tr. 441-42. Dr. O'Day attributed these limitations to "DDD (degenerative disc disease), plantar fasciitis of L heel, GERD, and repaired hernia[.]" *Id.* at 442. As for environmental limitations, Dr. O'Day indicated Plaintiff should avoid concentrated exposure to extreme cold, noise, vibration, fumes, odors, dusts, gases, poor ventilation, and machinery/height hazards. *Id.* at 443. He attributed these specific limitations to "DDD, plantar fasciitis of L heel, GERD, use of psychotropic

medications, and repaired hernia[.]" *Id.* at 443-44. Overall, he believed she could perform light work. Tr. 450.

On May 20, 2021, Dr. Judee Bland completed a Physical RFC Assessment upon the SSA's reconsideration of Plaintiff's disability claim. Tr. 458-62. Dr. Bland found the same limitations as Dr. O'Day, but she did not believe Plaintiff required any environmental limitations as to noise exposure. *See* Tr. at 460.

In analyzing these opinions, the ALJ wrote:

> Michael O'Day, DO, offered findings in a prior administrative medical determination. He found that the claimant could perform light work. He said he could frequently climb ramps and stairs, stoop, kneel, and crouch, occasionally crawl, and never climb ladders, ropes, and scaffolds. He recommended she avoid concentrated exposure to extreme cold, noise, vibration, pulmonary irritants, and hazards. He noted limitations due to degenerative disc disease, plantar fasciitis, GERD, use of psychotropic medications, and repaired hernia to prevent exacerbation of symptoms and injuries. He noted she was not scheduled for follow-up after an August 2020 hernia repair surgery. He also noted the claimant worked part-time in janitorial work. Judee Bland, M.D., concurred with the findings in a reconsideration determination. However, she found no noise limitations. Their opinions are somewhat persuasive. The medical evidence is consistent with a limitation to light work due to her degenerative disc disease with tenderness in the neck, back, and hips. Postural and environmental limitations are also consistent with the evidence to avoid exacerbation of symptoms, though [t]he evidence is inconsistent with any noise limitations. There was no evidence of headaches, hearing impairments, or other issues impacted by noise. However, their opinions are not wholly supportable. They found limitations based on multiple impairments, such as GERD and plantar fasciitis, that do not cause more than mild limitations in functioning based on the medical records. She reported only occasional symptoms of GERD and no ongoing hernia-related issues after surgery. She had no treatment for plantar fasciitis and did not complain of foot or heel symptoms. Further, they offered no explanation as to why her psychiatric medications caused physical limitations. The treatment records do not demonstrate complaints of side effects that caused limitations in her physical functioning.

Tr. 174 (internal citations to the record omitted).

Plaintiff argues, without further discussion, that the "ALJ failed to look at the medical opinions themselves in evaluating the supportability of the opinions and instead provided

13

examples of a lack of treatment in general to discount the supportability of the opinions, which is improper." ECF No. 18 at 7. Due to the brevity of the argument, it is unclear why Plaintiff believes that lack of treatment is irrelevant or inappropriate in a persuasiveness analysis. Supportability considers the extent to which an examiner's objective findings and evidence support his or her conclusions. *See* 20 C.F.R. § 404.1520c(c)(1). The ALJ determined that the opinions of the examiners were not well supported because (1) they did not explain how Plaintiff's psychiatric medications caused any physical limitations; and (2) they should not have cited to GERD or plantar fasciitis as reasons for work-related limitations because the record reflected those conditions were non-severe.

A diagnosis alone does not equate to disability, nor does it establish functional limitations. *See Collins ex rel. Williams v. Barnhart*, 335 F.3d 726, 730-31 (8th Cir. 2003) (a diagnosis alone "has minor significance one way or the other"; the dispositive question is whether claimant's functioning in various areas was markedly impaired, not what one doctor or another labels his disorder). As the ALJ noted, the record lacks evidence that Plaintiff's GERD, planter fasciitis, or psychotropic medication limited her functional capabilities in any significant way. *See Whitman v. Coleman*, 762 F.3d 701, 706 (8th Cir. 2014) (noting a lack of treatment may indicate a problem is not serious). Within the determination, the ALJ explicitly explains why Plaintiff's GERD is a non-severe impairment, *see* Tr. 165, and the record does not reflect any specific treatment for her plantar fasciitis or debilitating medication side effects. Notably, Plaintiff does not cite to any specific records with her argument. Thus, the Court cannot find error in the ALJ's determination that Dr. O'Day and Dr. Bland's RFC Assessments were only "somewhat persuasive" because they cited to impairments that were non-severe and/or not actively treated.

14

### B. RFC Evaluation

Plaintiff next argues the RFC is not supported by substantial evidence because the ALJ relied on the opinions of non-treating, non-examining medical consultants. ECF No. 18 at 7-8. This argument fails because there is no rule preventing an ALJ from finding the opinion of a non-examining state agency consultant more persuasive than that of a treating healthcare provider. *See* 20 C.F.R. § 404.1520c(a). With respect to Plaintiff's claim, which was filed after March 27, 2017, the Agency does *not* "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [Plaintiff's] medical sources." 20 C.F.R. § 404.1590c(a); *Guetzloff v. Kijakazi*, 2021 WL 5157487, at *5-6 (W.D. Mo. Nov. 5, 2021) (discussing change in regulations regarding the analysis of medical evidence) (internal citations omitted). In fact, "[t]he new regulations require the ALJ to consider the opinions of state agency medical consultants because they are highly qualified experts in Social Security disability evaluation." *Collins v. Kijakazi*, 2021 WL 3909670, at *4 (W.D. Mo. Aug. 31, 2021). *See also* 20 C.F.R. § 404.1513a(b)(1). Thus, to the extent Plaintiff attempts to invoke the pre-2017's "treating physician rule" by erroneously citing to pre-March 27, 2017 Eighth Circuit cases, her argument fails. Consequently, the ALJ did not err by relying on the opinions of State Agent consultants.

Plaintiff further argues the ALJ's physical RFC determination was not supported by substantial evidence because Dr. Bland's opinion was nearly two years old by the time of the hearing. ECF No. 18 at 8. The Court finds this argument unpersuasive. The passage of time will not, on its own, make a medical opinion outdated for the purposes of determining an RFC. *See, e.g. Bollinger o.b.o Bollinger v. Saul*, 2020 WL 4732042, at *3 (E.D. Mo. Aug. 14, 2020) (finding a 2-year-old opinion valid evidence since there was "no objective medical evidence in the record" showing "a marked change in condition" after the opinion); *Sullins v. Astrue*, 2011

15

WL 4055943, at *6 (E.D. Mo. Sept. 6, 2011) (finding an opinion covered "a relevant time period" though it was over one-year old).

Although medical records were created after Dr. Bland made her opinion, Plaintiff points to no specific evidence in the record to show that Plaintiff's physical health suffered a "marked change in condition," which would affect her RFC. Thus, the Court does not consider Dr. Bland's opinion stale. *See Bollinger*, 2020 WL 4732042 at *3. *See also Asbury v. Kijakazi*, 2022 WL 1288354, at *4 (E.D. Mo. Apr. 29, 2022) ("even if the passage of time between the date of the [doctor's] assessments and the date of the ALJ's decision was relevant to the analysis—which it is not—[Plaintiff] points to no new evidence in the intervening seventeen-month period that could arguably render the ALJ decision not supported by substantial evidence."). Plaintiff generally cites to records that were created after Dr. Bland formed her opinion, but she does not explain how those records markedly changed her condition as they appear to address the same symptoms she had when Dr. Bland formulated her RFC. *See* Tr. 444, 460-61. Additionally, the ALJ did not ignore treatment notes introduced after Dr. Bland's opinion as he addressed the entirety of the medical record, including those from 2021 and 2022. *See* Tr. 170-74.

Lastly, Plaintiff argues the ALJ erred by limiting her to simple, routine, and repetitive tasks requiring only simple work-related decisions with few changes in routine work setting, and no more than occasional interaction with supervisors, coworkers, and the general public. Plaintiff argues these limitations were the "creation of the ALJ who formed his own opinion" because Dr. Skolnick had indicated Plaintiff could only perform simple work-related tasks away from the public with superficial and infrequent contact with supervisors and coworkers and would be capable of responding to changes in the environment that are predictable and introduced gradually.

16

Residual functional capacity is a function-by-function assessment of an individual's ability to do work-related activities based on all the evidence. *Casey v. Astrue*, 503 F.3d 687, 696 (8th Cir. 2007). The ALJ retains the responsibility of determining a claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians, examining physicians, and others, as well as the claimant's own descriptions of her limitations. *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001). Ultimately, RFC is a medical question, which must be supported by medical evidence contained in the record. *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001). The claimant has the burden to establish RFC. *Mabry v. Colvin*, 815 F.3d 386, 390 (8th Cir. 2016). The RFC need only include the limitations supported by the record. *Tindell v. Barnhart*, 444 F.3d 1002, 1007 (8th Cir. 2006). The Court recognizes that an ALJ "may not draw upon his own inferences from medical reports." *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000). However, the Eighth Circuit has held that the "interpretation of physicians' findings is a factual matter left to the ALJ's authority." *Mabry v. Colvin*, 815 F.3d 386, 391 (8th Cir. 2016) (citation omitted).

In this case, the ALJ performed an extensive review of relevant evidence in a detailed fifteen-page summary of a 3,396-page record before concluding Plaintiff was capable of light work with certain additional limitations. *See* Tr. 162-77. The ALJ's analysis was entirely consistent with the requirements of SSR 96-8p and other applicable regulations. The ALJ found Dr. Skolnick's RFC assessment persuasive and adopted all of her mild and moderate limitations, while adjusting some of her work-related restrictions only after the ALJ carefully discussed a wide array of records related to her understanding, remembering, or applying information, interacting with others, concentrating, persisting, or maintaining pace, and adapting and managing herself. *See* Tr. 167-68. The ALJ assessed objective medical evidence, carefully described various objective findings, and cited numerous sources of medical evidence from

17

many treatment notes. *Id*. The Court does not find the ALJ committed error in defining slightly different work-related limitations to account for her mild and moderate difficulties. "[T]he ALJ's decision does not need to mirror a single particular medical opinion." *Burkhalter v. Berryhill*, 2017 WL 780792, at *10 (E.D. Mo. Feb. 28, 2017). The ALJ's decision fell within the available "zone of choice," and the Court cannot disturb that decision merely because it might have reached a different conclusion. *See Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011).

**C. Pain Evaluation**

Finally, Plaintiff argues the ALJ's decision lacks a proper pain evaluation because the ALJ failed to discuss the *Polaski v. Heckler* factors. ECF No. 18 at 10-11. Notably, Plaintiff does not state what factor(s) the ALJ allegedly failed to discuss.

Social Security Ruling 16-3p[4] eliminated the word "credibility" from the analysis of subjective complaints, replacing it with "consistency" of a claimant's allegations with other evidence. *See* SSR 16-3p, 2017 WL 5180304 at *2 ("[W]e are eliminating the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term."). This Rule incorporates the familiar factors from *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984) which previously guided an ALJ's analysis of subjective complaints, including: objective medical evidence, the claimant's work history, and other evidence relating to (1) the claimant's daily activities; (2) the duration, frequency and intensity of the symptoms (*i.e.*, pain); (3) precipitating and aggravating factors; (4) the dosage, effectiveness and side effects of medication; and (5) any functional restrictions. *See Schwandt v. Berryhill*, 926 F.3d 1004, 1012 (8th Cir. 2019). If the evidence as a whole "undermines" or "cast[s] doubt on" a claimant's testimony, an ALJ may decline to credit a claimant's subjective complaints. *Id.* If the ALJ

---

[4] The revised Ruling became effective on March 27, 2017. It applies to determinations or decisions made by the Social Security Administration on or after March 28, 2016.

explicitly discredits a claimant's subjective complaints and gives good reasons, the Eighth Circuit has held it will defer to the ALJ's judgment, even if the ALJ does not cite to *Polaski* or discuss every factor in depth. *See Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007); *Strongson v. Barnhart*, 361 F.3d 1066, 1072 (8th Cir. 2004).

Contrary to Plaintiff's argument, the ALJ explicitly confirmed in his decision that he considered the factors articulated in 20 C.F.R. 416.929 and SSR 16-3p, including those factors defined in *Polaski*. The ALJ observed Plaintiff "remained able to care for her children and perform her activities of daily living," which included being able to do laundry, cook, handle her own finances, shop, clean, and write a memoir; however, her mood sometimes affected these activities. Tr. 167, 169, 171, 174. She was also able to maintain part-time, and sometimes full-time, employment during the relevant period, which she said she enjoyed. Tr. 168, 175, 1514, 1544, 1600, 1614, 1649. The ALJ noted that although she testified to issues with socializing, the record was devoid of any evidence that she could not get along with providers. Tr. 170. Rather, the ALJ pointed to treatment records showing she got along with co-workers, had "improved management of family relations," and engaged in social behaviors like going to the casino and meeting her cousins to celebrate her birthday. Tr. 171-72. As for pain, the ALJ explicitly discussed that the record showed "little evidence documenting complaints of back pain or treatment for sciatic symptoms." Tr. 170. The ALJ acknowledged Plaintiff's struggles with mental health, but also noted that she was relatively stable when she took her medications but required emergency care when she abruptly stopped taking her medication. Tr. 172. It is clear from the ALJ's determination that he did consider the required SSA factors in evaluating her symptoms.

While Plaintiff may disagree with the ALJ's conclusion, this Court does not substitute its own judgment for that of the ALJ, even if different conclusions could be drawn from the

19

evidence, and even if this Court may have reached a different outcome. *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010). "[The Court's] task is not to reweigh the evidence, and [the Court] may not reverse the Commissioner of the Social Security Administration's decision merely because substantial evidence would have supported an opposite conclusion or merely because [the Court] would have decided the case differently." *Harwood v. Apfel*, 186 F.3d 1039, 4042 (8th Cir. 1999) (emphasis added).

For the foregoing reasons, the Court finds that the ALJ's opinion is supported by substantial evidence on the record as a whole and contains no legal errors.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff Quina C.'s Complaint is **DISMISSED, with prejudice**. A separate judgment will accompany this Memorandum and Order.

**IT IS FURTHER ORDERED** that the Clerk of Court shall substitute Carolyn Colvin for Martin J. O'Malley in the court record of this case.

So Ordered this 16th day of January, 2025.

_____
STEPHEN R. WELBY
UNITED STATES MAGISTRATE JUDGE